Thuong TRAN, Appellant,

v.

The STATE of Texas, Appellee

No. 14–03–01372–CR to 14–03–01374–CR.

Court of Appeals of Texas, Houston (14th Dist.).

June 2, 2005.

Discretionary Review Refused Oct. 5, 2005.

---

1. TEX.R.APP. P. 47.4.

Kurt B. Wentz, Houston, for appellants.

Bridget Holloway, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices FOWLER and SEYMORE.

## OPINION

SEYMORE, Justice.

Appellant, Thuong Trang, was convicted of three separate counts of aggravated sexual assault of a child. A jury sentenced appellant to eight years' imprisonment for each count, and the trial court granted the State's motion to cumulate the sentences. In six issues, appellant contends that (1) the trial court erred by denying his challenge for cause of a prospective juror, (2) the trial court erred by permitting the state to ask improper commitment questions during voir dire, (3) the evidence is legally and factually insufficient to support his convictions, and (4) the trial court erred by cumulating his sentences. We affirm.

## I. BACKGROUND

In May 2001, O.T. told several children at her school that appellant. O.T.'s grandfather, had sexually assaulted her. One of the children informed a teacher, who then notified the school counselor, Marsha Krieger. Krieger spoke to O.T. in private, and O.T. confided that appellant had sexually assaulted her on three separate occasions. At trial, Krieger testified regarding O.T.'s description of these three incidents. On the first occasion, appellant was babysitting O.T. and her siblings when appellant took O.T. into the bedroom and inserted his penis into O.T.'s vagina and rectum. On the second occasion, appellant was babysitting O.T. at O.T.'s apartment when appellant took O.T. into the bedroom and once again "raped" and "sodomized" her. Finally, on the third occasion, O.T. was in the bathroom at appellant's home when appellant entered the bathroom and forced O.T. to perform oral sex on him. When O.T. gagged, appellant proceeded to rape and sodomize her in the bathroom.

O.T. also testified at trial that appellant sexually assaulted her on three separate occasions. O.T. testified that the first sexual assault occurred at appellant's home. O.T. and her siblings were watching televi-

sion when appellant took O.T. into the bedroom and closed the door, leaving her siblings in another room. Appellant placed O.T. on the bed, pulled her pants down, and placed her legs over his shoulders. O.T. testified that appellant put his penis into her "butterfly part," which was O.T.'s word for her genitals.

According to O.T., the second sexual assault occurred in appellant's bathroom. O.T. was sitting in the bathroom when appellant entered the bathroom, pulled down O.T.'s pants, and placed her legs over his shoulders. Appellant took spit from his mouth and put it on O.T.'s "butterfly part" before putting his penis inside. Appellant then stopped, turned O.T. around, and placed his penis into her "bottom."

According to O.T., the third sexual assault occurred at O.T.'s house. O.T. could not remember with certainty where in the house the incident occurred, but stated that it was probably in her bedroom on her bunk bed. O.T. testified that appellant tried to make O.T. kiss him, but O.T. backed away. Appellant licked O.T.'s "butterfly part" and then put his penis inside O.T.'s mouth while pushing her head up and down.

After O.T. made her outcry concerning the alleged sexual assaults, she was taken to the Children's Assessment Center for a sexual assault examination. A pediatrics nurse practitioner, Deborah Parks, interviewed O.T. and performed the sexual assault examination. In her report, Nurse Parks indicated that, during the examination, she discovered a separation in O.T.'s hymen.

At trial, Dr. Rebecca Girardet testified on behalf of the State. Although Dr. Girardet did not perform O.T.'s examination, she reviewed Nurse Parks' records and a videotape of the examination. Dr. Girardet testified that O.T.'s hymenal tissue was minimal, which could indicate recurrent vaginal trauma. However, Dr. Girardet testified that most experts are reluctant to conclusively determine that minimal hymenal tissue is the result of vaginal trauma. She testified that minimal hymenal tissue could be normal for O.T.'s age. Dr. Girardet further testified that after reviewing the videotape of the examination, she was unable to confirm whether there was a separation in O.T.'s hymen.

## II. DENIAL OF CHALLENGE FOR CAUSE

In his first issue, appellant contends the trial court erred by denying his challenge for cause of venireperson Goranson. Appellant contends venireperson Goranson is challengeable for cause because of her "repeated statements that she could not be fair" to appellant.

■ A venire member is challengeable for cause if she has a bias or prejudice in favor of or against the defendant. *See* TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9) (Vernon 1989). In the context of jury service, prejudice simply means a "prejudgment." *Anderson v. State*, 633 S.W.2d 851, 853 (Tex.Crim.App.1982). Bias is an inclination toward one side of an issue rather than to the other which leads to the natural inference that a juror will not, or did not act, with impartiality. *Id.* Under article 35.16(a)(9), it is not necessary to show a particular bias or prejudice in favor of or against the defendant. *Sosa v. State*, 769 S.W.2d 909, 918 (Tex.Crim. App.1989). It is sufficient that the prospective juror states that she cannot be a fair and impartial juror. *Id.*

■ Bias is established as a matter of law when a prospective juror admits that he is biased for or against the defendant. *Anderson*, 633 S.W.2d at 854. When a prospective juror is shown to be biased as

a matter of law, she must be excused when challenged, even if she states that she can set aside her bias and provide a fair trial. *Id.* However, it is left to the discretion of the trial court to initially determine whether such a bias exists and the court's decision will be reviewed in light of all of the answers given. *Id.* Unlike the trial court, we cannot observe nor listen to the venireperson and deference is therefore given to the trial court's decision. *Feldman v. State,* 71 S.W.3d 738, 744 (Tex.Crim.App. 2002).

■ Toward the end of voir dire examination, appellant's counsel asked the venire members if there was "[a]nything you can think of that you want to tell me before I sit down?" Venireperson Wood responded:

> I think I would have to say the things that I have heard or maybe the things that we have not heard kind of lead me to believe that our only thing that we're going to hear is the victim and this is what we're going to have to go on. I'm thinking if they decided to press charges it must be a pretty convincing witness. And I'm thinking, hum, to put a young person through that kind of trauma of going through the trial, I don't know, I'm, I'm not sure I could be impartial.

Counsel then asked if any other venire members agreed with Ms. Wood, and the following exchange occurred:

> Venireman Chickowski: No. 8. I think I might be a little impartial [sic]. The age group is in my age range .... You know, depending about how the facts would come out, I just want you to know I'm concerned about that, that's all.

> Defense Counsel: You have a concern but you think you could be fair, all right.

> Venireman Goranson: *No 5. I'd have a similar concern.*

> Defense Counsel: *As Ms. Wood. You couldn't be fair?*

> Venireman Goranson: *Right.*

■ Venireperson Goranson's first response in the above dialogue indicates that she had a "similar concern" as venireperson Wood: she would have a propensity to give greater credibility to a young witness the State was willing to put through the trauma of a trial. A predisposition to give greater weight or credibility to the State's witness is effectively a bias against the defendant. *Jones v. State,* 982 S.W.2d 386, 389 (Tex.Crim.App.1998). Therefore, a venire member is challengeable for cause under article 35.16(a)(9) if she cannot impartially judge the credibility of witnesses. *Id.* However, this means only that jurors must be open-minded and persuadable, with no extreme or absolute positions regarding the credibility of any witness. *Id.* A venire member is not challengeable for cause simply because she would give a certain class of witnesses an edge in terms of credibility because complete impartiality cannot be realized as long as human beings are called upon to be jurors. *Ladd v. State,* 3 S.W.3d 547, 560 (Tex.Crim.App.1999). Although venireperson Goranson's first response indicated that she was inclined to give greater credibility to a child witness put through the trauma of a trial, she did not manifest an extreme or absolute belief that would be immune to persuasion. She only stated that she had a "similar concern" as to whether she could be impartial. Therefore, Goranson's first response does not give rise to a challenge for cause. Likewise, Goranson's second response appears to merely confirm that her "concern" was the same as that expressed by Ms. Wood.

After the above exchange was completed, appellant's counsel proceeded to propound questions based upon the response given by venireperson Wood:

Defense Counsel: All right. 34 and 35, you feel the same way as Ms. Wood, you couldn't be fair? (Cards Raised)

Defense Counsel: 34, 35, 36, 60. Speak now or forever hold your peace.

Defense Counsel: 19, 20, 24. You feel that way, sir, like Ms. Wood, because of the allegations you couldn't be fair?

Venireperson Laster: Yeah.

Defense Counsel: *15, you feel the same way as Ms. Woods does?*

Venireperson Standish: Yes.

Defense Counsel: No 41 [1], all right. 64, yes ma'am. 60, 61, 32. Is that everybody? I called everybody's name out?

Venireperson Goranson: *No. 5.*

Appellant appears to rely on the above dialogue to argue that venireperson Goranson could not be fair *based on the allegations in the case.* However, after a careful review of the dialogue, we are unable to conclude that Goranson affirmatively stated that she could not be fair based on the allegations in the case. Goranson did not directly respond to the question posed by appellant's counsel in which he asked some of the prospective jurors if, like Ms. Wood, they could not be fair based on the allegations in the case. Goranson only responded after appellant's counsel asked juror 15 if he felt the same way as Ms. Wood. Therefore, Goranson's response appears to only confirm that she agreed with the

"concerns" expressed by venireperson Wood. As previously discussed, venireperson Wood merely indicated that she would be inclined to give greater credibility to a child witness put through the trauma of a trial. This inclination, however, does not give rise to a challenge for cause to either Wood or Goranson.[2]

After reviewing the record, we are unable to conclude that venireperson Goranson made "repeated statements that she could not be fair" to appellant. Accordingly, the trial court did not abuse its discretion by denying appellant's challenge for cause.

We overrule appellant's first issue.

## II. COMMITMENT QUESTIONS

In his second and third issues, appellant contends that the trial court erred by allowing the State to ask two improper commitment questions during voir dire. Specifically, appellant complains of the following questions which sought to determine if the venire members could reach a guilty verdict based on the testimony of only one witness:

(1) "Some people say, you know what, based solely on the testimony of one witness, even if I believe that witness is credible, they proved all of your elements beyond a reasonable doubt, I couldn't do it, I

---

1. Venireperson Wood is number 41.

2. We note that venireperson Goranson's response in this dialogue is susceptible to the interpretation that she was attempting to indicate that she could not be fair *based on the allegations in the case.* However, we cannot reach that conclusion for two reasons. First, we are faced with a "cold record" and must consider Goranson's responses in light of the questions that actually appear in the record. Here, as previously discussed, the question to which venireperson Goranson responded was whether she agreed with Ms. Wood; not whether she could be fair based on the allega-

tions in the case. Second, the questions posed by appellant's counsel in which he asked some prospective jurors whether, like Ms. Wood, they could not be fair based on the allegations in the case, is a misleading question. Venireperson Wood did not state that she couldn't be fair *based on the allegations in the case.* It is highly plausible that venireperson Goranson recognized this inconsistency in the questions, and therefore, did not directly respond to the questions in which appellant's counsel asked the venire members if, like Ms. Wood, they could not be fair based on the allegations in the case.

couldn't convict somebody based solely on the testimony of that one witness. That's what I need to know. I'll go juror by juror. Our answer is pretty simple, yes or no, could you-if I present one witness, that witness you find to be credible and they testify as to all my elements beyond a reasonable doubt, could you find that person guilty?"

(2) "Okay, change it around. For those of you that said 'Yes,' would your answer change if it was a child witness? And a child witness, as defined under the law in this case, is anyone under the age of 14. Raise your card for me if your answer would change from yes to no. If you already said no you don't need to raise your card. If you said yes, would it change if that witness is under the age of 14 as defined by law; would your answer change?"

The trial court has broad discretion over the process of selecting a jury. *Barajas v. State,* 93 S.W.3d 36, 38 (Tex. Crim.App.2002); *Allridge v. State,* 762 S.W.2d 146, 167 (Tex.Crim.App.1988). Therefore, we will not disturb the trial court's ruling on the propriety of a particular question during voir dire absent an abuse of discretion. *Barajas,* 93 S.W.3d at 38; *Allridge,* 762 S.W.2d at 163.

The test for determining when a voir dire question calls for an improper commitment consists of three steps. *Standefer v. State,* 59 S.W.3d 177, 179–84 (Tex. Crim.App.2001). The first step requires the trial court to determine whether a particular question is a commitment question. *Id.* at 179. If the court determines that a particular question is a commitment question, the court must then decide whether the question gives rise to a valid challenge for cause. *Id.* at 181–82. If the question meets the "challenge for cause" requirement, the court must then determine whether the question includes *only*

those facts necessary to test whether a prospective juror is challengeable for cause. *Id.*

The first question of which appellant complains constitutes a commitment question because it required prospective jurors to commit to convict a defendant or to resolve issues concerning witness credibility under a particular set of facts—the testimony of only one witness. *See Standefer,* 59 S.W.3d at 179 (holding that a commitment question is a question that "commit[s] a prospective juror to resolve, or to refrain from resolving, an issue in a certain way after learning a particular fact"). Because the first question constitutes a commitment question, we must further inquire to determine whether the question gives rise to a valid challenge for cause. *Id.* at 181–82. A venireperson is challengeable for cause if he would hold the State to a higher standard than "beyond a reasonable doubt." *Coleman v. State,* 881 S.W.2d 344, 360 (Tex.Crim.App.1994). Consequently, a prospective juror is properly subject to a valid challenge for cause if he indicates that he could not convict based on the testimony of one witness, *even if he believed that witness* beyond a reasonable doubt. *See Castillo v. State,* 913 S.W.2d 529, 533 (Tex.Crim.App.1995). However, a prospective juror is not challengeable for cause if the venireperson would *require more than one witness to be convinced* beyond a reasonable doubt. *See Zinger v. State,* 932 S.W.2d 511, 514 (Tex.Crim.App.1996). Here, the State asked whether the venire members could convict based on the testimony of one witness *if they believed that witness* beyond a reasonable doubt. A negative response to this question would properly give rise to a valid challenge for cause, and therefore, meets the second requirement for a

proper commitment question under *Standefer*.

Even when a question meets the "challenge for cause" requirement, the question may still be improper if it includes facts in addition to those necessary to establish a challenge for cause. *Standefer*, 59 S.W.3d at 182. However, the question in this case was not fact intensive, but rather only included those facts necessary to determine whether a prospective juror was challengeable for cause. Therefore, the State's first question was a proper commitment question.

 The second question of which appellant complains focused on whether the prospective jurors could convict a defendant based solely on the testimony of a child witness if they believed that witness beyond a reasonable doubt. The record reflects that appellant did not make an objection to this question in the trial court. To preserve error for appellate review, the complaining party must make a timely, specific objection at the earliest possible opportunity. *See* TEX. R. APP. P. 33.1; *Goldberg v. State*, 95 S.W.3d 345, 368 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd). Because Appellant made no objection, he has failed to preserve his complaint for appeal.

We overrule appellant's second and third issues.

### III. SUFFICIENCY OF THE EVIDENCE

 In his fourth and fifth issues, appellant contends that the evidence is legally and factually insufficient to support his convictions.[3] In reviewing the legal sufficiency of evidence, we view all of the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Young v. State*, 14 S.W.3d 748, 753 (Tex.Crim.App.2000). In conducting this review, we do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App. 1993). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App.1993).

In reviewing the factual sufficiency of evidence, we view all of the evidence in a neutral light and determine whether the evidence of guilt, standing alone, is too weak to support the finding of guilt beyond a reasonable doubt, or the evidence contrary to the verdict is so strong that the beyond-a-reasonable-doubt standard could not have been met. *Zuniga v. State*, 144 S.W.3d 477, 485 (Tex.Crim.App.2004). Although we review the fact finder's weighing of the evidence, and we are authorized to disagree with the fact finder's determination, our evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In our review, we must consider the evidence that the appellant claims most un-

---

3. Appellant invites this court to review the legal and factual sufficiency of the evidence under the standards enunciated by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256 (Tex.2002) and *In re C.H.*, 89 S.W.3d 17 (Tex. 2002). However, we decline to do so. In criminal matters, we apply the standards of review for sufficiency of the evidence challenges enunciated by the Texas Court of Criminal Appeals. *See, e.g., Zuniga v. State*, 144 S.W.3d 477 (Tex.Crim.App.2004).

dermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the sexual organ of a child younger than fourteen years of age to contact or penetrate the mouth, anus, or sexual organ of the actor, or another person, or causes the penetration of the mouth of the child by the sexual organ of the actor. *See* TEX. PEN. CODE ANN. § 22.021(a)(1)(B), 2(B) (Vernon Supp.2004–05). Appellant was convicted of three counts of the charged offense. In cause number 919, 455 appellant was convicted of placing his sexual organ inside the sexual organ of O.T. In cause number 928,750, appellant was convicted of placing his sexual organ in the anus of O.T. In cause number 928,751, appellant was convicted of causing the penetration of O.T.'s mouth with his sexual organ.

■ Appellant first asserts that the evidence is legally insufficient to support his convictions. However, as appellant concedes in his brief, O.T. testified to all elements of each of the charged offenses. In sexual abuse cases, the testimony of the child victim alone is sufficient to support the conviction. *Tear v. State*, 74 S.W.3d 555, 560 (Tex.App.—Dallas 2002, pet. ref'd); *Ruiz v. State*, 891 S.W.2d 302, 304 (Tex.App.—San Antonio 1994, pet. ref'd). Therefore, under the facts of this case, the evidence is legally sufficient to support appellant's convictions for the three counts of aggravated sexual assault of a child.

■ Appellant next contends the evidence is factually insufficient to support his convictions. In support of his factual insufficiency argument, appellant raises various arguments attacking the credibility of the testimony given by O.T. and Marsha Krieger. Specifically, appellant contends (1) neither O.T. nor Krieger described the alleged incidents of sexual assault in "graphic detail," (2) the testimony of Krieger and O.T. is conflicting as to the location of the incidents of sexual assault, (3) O.T.'s father testified that O.T. was untruthful, needed a great deal of attention, and had falsely accused him of abuse, and (4) regarding the allegations in cause number 928,751, O.T. could only say that it was "probable" the incident occurred in the bedroom and she was "probably" asleep when appellant "probably" came in her bedroom.

It is within the sole province of the jury to reconcile conflicts, contradictions, and inconsistencies in the evidence. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App. 1982). The jury is also the judge of the credibility of the witnesses, and it is free to believe or disbelieve any portion of a witness' testimony. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim.App.1986). Here, the jury was presented with some inconsistent testimony from O.T. and Marsha Krieger concerning the location of the alleged sexual assaults, as well as the exact incidents that transpired during the sexual assaults. The jury heard and considered the inconsistencies in the testimony and determined that appellant was guilty of all three counts of aggravated sexual assault. Considering all of the evidence in the case, and deferring to the jury's role as the sole judge of the weight and credibility given to witness's testimony, we are unable to conclude that the inconsistencies in the testimony are enough to declare the verdict factually insufficient.

Appellant further argues that the evidence is factually insufficient because Nurse Parks "falsely reported" that there was a separation of O.T.'s hymen. Appellant points out that Dr. Girardet did not observe a separation of O.T.'s hymen when she reviewed the videotape of the examina-

tion. Appellant also points out that Nurse Parks used only one position when examining O.T. for signs of sexual abuse, but it is common practice to use multiple positions when doing this type of examination to confirm, or exclude, whether the examination position may have contributed to the abnormality finding.

Although Dr. Girardet could not confirm the separation of O.T.'s hymen, there is no evidence to show that Nurse Parks "falsely reported" a separation. Moreover, we conclude that the credibility of Nurse Parks' testimony, and the conclusions she drew from her physical findings, is properly left to the jury's determination.[4]

Finally, appellant contends that it is unlikely that the alleged incidents of sexual assault actually occurred because (1) O.T.'s father and siblings never heard of the alleged occurrences although they lived with O.T. in a one-bedroom apartment, and (2) appellant worked twelve to sixteen hours a day, and when appellant was home, his wife was "constantly" present.[5] While this evidence suggests that appellant did not have a large window of opportunity to commit the alleged sexual assaults, it does not necessarily lead a rational jury to conclude that appellant did not commit the offenses. Accordingly, we are unable to conclude that this evidence renders the verdict factually insufficient.

Viewing all of the evidence in a neutral light, we cannot say the evidence of guilt, when considered by itself, is too weak to support a finding beyond a reasonable doubt that appellant committed the charged offenses or the contrary evidence is so strong that the beyond-a-reasonable-doubt standard could not have been met. Accordingly, we hold that the evidence is factually sufficient to support the jury's finding of guilt for each of the alleged offenses.

We overrule Appellant's fourth and fifth issues.

## IV. CUMULATION OF SENTENCES

■■■ In his sixth issue, appellant contends that the trial court abused its discretion by cumulating appellant's sentences.[6] A trial court has discretion to cumulate sentences in virtually every case. *See* TEX. CODE CRIM. PROC. ANN. art.

---

4. As part of appellant's factual insufficiency argument, he "incorporates" all of the arguments raised in his legal sufficiency argument. We note that in his legal insufficiency argument, appellant raised several arguments attacking the lack of physical evidence in the case. Despite appellant's contentions, there was some physical evidence to indicate that O.T. was sexually abused, including: (1) Dr. Girardet's testimony that O.T.'s minimal hymenal tissue *could* be an indication of vaginal trauma; and (2) Nurse Parks' report indicating a separation of O.T.'s hymen. Moreover, Dr. Girardet testified that more often than not, in sexual abuse cases, there are no signs of physical abuse. Accordingly, the sparseness of physical evidence does not render the verdict factually insufficient.

5. Although appellant contends that his wife was constantly present, we note that O.T.'s sister testified that there were occasions when

appellant would babysit the children by himself.

6. Specifically, appellant contends that the trial court unfairly decided to cumulate appellant's sentences because: (1) appellant was sixty-three years old at the time of trial and is likely to die in prison; (2) appellant has no prior criminal history and was eligible for probation; (3) appellant is a veteran of the Vietnam War; (4) appellant sponsored three Viatnamese children for entry into the United States; (5) O.T. did not exhibit any emotional or physical signs of abuse after the alleged sexual assaults; (6) there is no likelihood of future abuse because Child Protective Services has removed O.T. from her father's custody, and appellant has been sentenced to the Texas Department of Criminal Justice; and (7) the jury "obviously" believed appellant deserved a lesser sentence.

**90**

42.08(a) (Vernon Supp.2004–05). An exception to this rule is found in Texas Penal Code Section 3.03(a), which provides that when a defendant is found guilty at a single trial of more than one offense arising out of the same criminal episode,[7] the sentences for each offense must run concurrently. TEX. PEN. CODE ANN. § 3.03(a) (Vernon 2003). However, Section 3.03(b)(2)(A) exempts certain offenses, including aggravated sexual assault of a child, from the application of Section 3.03(a). In this case, the charged offenses were for aggravated sexual assault of a child, and therefore, the trial court was authorized to cumulate the sentences under Section 3.03(b)(2)(A).

 When, as here, the law authorizes the imposition of cumulative sentences, the trial court has absolute discretion to cumulate the sentences, and a defendant has no right to a concurrent sentence. *See Smith v. State,* 575 S.W.2d 41, 41 (Tex.Crim.App. 1979). Therefore, the trial court did not abuse its discretion by cumulating appellant's sentences.

We overrule appellant's sixth issue. Accordingly, the judgments of the trial court are affirmed.

---

7. One definition of "criminal episode" is the "commission of two or more offenses [when] ... the offenses are the repeated commission of the same or similar offenses." TEX. PEN. CODE ANN. § 3.01 (Vernon 2003).