Affirmed and Memorandum Opinion filed June 29, 2010.

 

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NOS. 14-09-00144-CR
& 14-09-00145-CR

___________________

 

Nicholas Martinez, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 400th District Court

Fort Bend County,
Texas



Trial Court Cause Nos. 44216 & 44217

 



 

 

MEMORANDUM OPINION

            Appellant Nicholas Martinez appeals his convictions
for two counts of aggravated sexual assault of a child, challenging the legal
and factual sufficiency of the evidence to support the convictions.  We affirm. 


 

 

I.  Factual and Procedural
Background

Police responded to a call from the mother of Debra,[1] a ten-year-old girl,
regarding Debra’s allegations of sexual misconduct by appellant, Debra’s
step-father.  Appellant lived with Debra, Debra’s mother, and Debra’s
grandmother in the grandmother’s home.  At the scene, the officer spoke with
Debra, Debra’s mother, and the grandmother.  The police collected various items
from the home, including the clothes and underwear Debra wore during the
incident and a garbage bag that may have been at the scene of the incident. 
Debra was referred to the Children’s Advocacy Center for further evaluation by
a forensic interviewer. 

Appellant was charged in two indictments with
aggravated sexual assault of a child. He pleaded “not guilty” to both
indictments.  The cases were consolidated for trial.  

At trial, Debra testified that on the day in
question, she took a garbage bag to the backyard for appellant.  According to Debra,
appellant grabbed the bag from Debra and instructed her to go into a playhouse in
the backyard and lie down on the bag.  Debra explained that she complied with
appellant’s instructions.  Debra gave a detailed description of how appellant pulled
her underwear halfway down and put his “poo-poo bug in her poo-poo”[2] before her
grandmother intervened.  Debra described appellant “moving” while his “middle
part” was touching her “middle part.”[3]
 She testified that her clothing was not removed during the incident.

Debra’s grandmother confirmed that on the day in
question appellant asked her to send Debra to the backyard with a garbage bag. 
Debra’s grandmother testified that she was suspicious of appellant, so she went
out to the playhouse.  She explained that her suspicions were based on a
previous occasion when she caught appellant “hovering over” Debra on the couch,
and characterized appellant’s behavior as “odd.”  She also explained that she
noticed the way appellant “watched” Debra, and it caught her attention.  During
her testimony, Debra’s grandmother explained that although the door to the playhouse
was covered by a sheet, she was able to see through the sheet and saw appellant
and Debra on the floor.  Debra was lying on the ground, facing up while appellant’s
head was “up and over” Debra’s.  Upon noticing Debra’s grandmother, appellant
jumped up and denied doing anything.  Debra’s grandmother confronted appellant
and informed him that he had to leave.  Appellant packed his belongings and
left.  Debra’s grandmother later informed Debra’s mother about the events that
had transpired.  

Debra’s mother testified that when she first tried to
talk to Debra about the incident, Debra did not tell her what happened.  After
their initial conversation, Debra’s mother instructed Debra to take a shower
and go to bed.  The next morning, Debra’s mother again questioned Debra about
the previous day’s events.  When asked by her mother, Debra responded
affirmatively that she saw appellant’s “poo-poo bug” and that he put his
“poo-poo bug in her poo-poo.”  Based on this conversation, Debra’s mother notified
the police.  

During trial, a Sexual Assault Nurse Examiner (SANE),
who had performed a sexual-assault examination on Debra, testified that she
found no trauma to Debra’s sexual organs.  A forensic scientist who tested Debra’s
underwear testified that the tests from the underwear came back negative for bodily
fluids such as blood and semen.  The forensic scientist also testified that a rape
kit examination performed on Debra showed no indication of fluids.  

The forensic interviewer from the Children’s Advocacy
Center testified that Debra described the incident with appellant during the
interview.  According to the forensic interviewer, Debra also told her about
another incident when appellant put his “poo-poo bug” in her “booty.”  Debra indicated
to the interviewer that this activity occurred on a regular basis.  In her
in-court testimony, Debra also gave details describing these incidents, in
which appellant put his “middle part” in her “booty.”[4]  On these
occasions, according to Debra, while her mother was at work in the morning
hours before school, Debra would sleep on a mattress beside appellant’s bed.  Debra
testified that appellant would come into the room, pull Debra’s underwear down,
and put his “middle part” in her “booty.”  Debra described how she would be
lying face down and that appellant would get on her back and “move” his “middle
part” inside her “booty.”  Debra testified that this activity occurred on
multiple occasions.   

A jury found appellant guilty of both counts of
aggravated sexual assault of a child and assessed punishment at twenty-five years’
confinement for each offense, with the sentences to run consecutively. 

II. Issues and Analysis

In two issues, appellant challenges the legal and
factual sufficiency of the evidence supporting his convictions.[5]  For support, appellant
points to a lack of physical and DNA evidence, Debra’s inconsistent statements
of the incidents, Debra’s dislike of appellant, and Debra’s grandmother’s
testimony that she did not witness any clothing removed or other signs of
sexual assault. 

When evaluating a challenge to the legal sufficiency
of the evidence, we view the evidence in the light most favorable to the
verdict.  Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). 
The issue on appeal is not whether we, as a court, believe the State’s evidence
or believe that appellant’s evidence outweighs the State’s evidence.  Wicker
v. State, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984).  The verdict may not
be overturned unless it is irrational or unsupported by proof beyond a
reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App.
1991).  The jury, as the trier of fact “is the sole judge of the credibility of
the witnesses and of the strength of the evidence.”  Fuentes v. State,
991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may choose to believe or
disbelieve any portion of the witnesses’ testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with conflicting evidence,
we presume the trier of fact resolved conflicts in favor of the prevailing
party.  Turro v. State 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). 
Therefore, if any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt, we must affirm.  McDuff v.
State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).  

In contrast, when evaluating a challenge to the
factual sufficiency of the evidence, we view all the evidence in a neutral
light and inquire whether we are able to say, with some objective basis in the
record, that a conviction is “clearly wrong” or “manifestly unjust” because the
great weight and preponderance of the evidence contradicts the jury’s verdict. 
Watson v. State, 204 S.W.3d 404, 414–17 (Tex. Crim. App. 2006).  It is
not enough that this court harbor a subjective level of reasonable doubt to
overturn a conviction that is founded on legally sufficient evidence, and this
court cannot declare that a conflict in the evidence justifies a new trial
simply because it disagrees with the jury’s resolution of that conflict.  Id.
at 417.  If this court determines the evidence is factually insufficient, it
must explain in exactly what way it perceives the conflicting evidence greatly
to preponderate against conviction.  Id. at 414–17.  The reviewing
court’s evaluation should not intrude upon the fact finder’s role as the sole
judge of the weight and credibility given to any witness’s testimony.  See
Fuentes, 991 S.W.2d at 271.  In conducting a factual-sufficiency review, we
discuss the evidence appellant claims is most important in allegedly
undermining the jury’s verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003).  

A person commits the offense of aggravated sexual
assault of a child if the person intentionally and knowingly (1) causes
penetration of the sexual organ or anus of a child younger than fourteen years
of age, and (2) causes the sexual organ of a child younger than fourteen years
of age to contact the person’s sexual organ.  See Tex. Penal Code Ann. §§ 22.021(a)(1)(B)(iii),
(2)(B), 22.011(c)(1), (2) (Vernon Supp. 2009).  Appellant was charged by two
indictments with aggravated sexual assault of a child involving contact and
penetration.  In the first indictment, the State alleged that appellant
knowingly and intentionally caused the contact and penetration of Debra’s
female sexual organ with his sexual organ.  In the second indictment, the State
alleged that appellant knowingly and intentionally caused the contact and penetration
of Debra’s anus with his sexual organ.  

Debra testified in detail that when she was ten years
old, while in the playhouse with appellant, appellant put his “poo-poo bug” in
her “middle part.”  See Tex.
Penal Code Ann. §§ 22.021(a)(1)(B)(iii), (2)(B), 22.011(c)(1), (2).  Debra
also described another incident when appellant put his “poo-poo bug” in her
“booty” on almost a daily basis when she was between the ages of eight and ten. 
See id. 

Appellant argues there
is a lack of physical and DNA evidence to support Debra’s claims of sexual abuse. 
According to appellant, the only evidence presented was Debra’s uncorroborated testimony;
he attests that Debra’s grandmother’s testimony alone is only circumstantial
evidence of a sexual assault.  In the case of an aggravated sexual assault, the
testimony of the child victim alone is sufficient to support a conviction.  See
Tex. Code Crim. Proc. Ann. art.
38.07 (Vernon 2005); Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim.
App. 1978); Tran v. State, 221 S.W.3d 79, 88 (Tex. App.—Houston [14th
Dist.] 2005, pet. ref’d).  

Appellant also asserts that none of the clothing
Debra wore, the garbage bag she carried to the playhouse, or the rape kit revealed
physical or DNA evidence to support Debra’s allegations of a sexual assault.  Physical
evidence is not required when the complainant provides ample testimony to
establish that the sexual assault occurred.  Garcia, 563 S.W.2d at 928 (concluding
complainant’s testimony alone to be sufficient evidence of penetration); Bargas
v. State, 252 S.W.3d 876, 889 (Tex. App.—Houston [14th Dist.] 2008, no
pet.) (concluding that medical evidence is not required when complainant
provides detailed testimony sufficient to establish that the accused committed
aggravated sexual assault).  During trial, the SANE nurse, who examined Debra, explained
that although she found no trauma to Debra’s sexual organs, the absence of
trauma in examinations of sexually abused child victims is common.  See
Bargas, 252 S.W.3d at 885 (involving similar testimony and concluding
evidence was legally and factually sufficient to support convictions for sexual
assault of a child).  Additionally, the forensic scientist who performed the
test on Debra’s underwear testified that a lack of physical evidence could be
attributed to the perpetrator being interrupted, or to the perpetrator not
causing enough trauma to result in bleeding.  In her in-court testimony, a
detective with the Special Crimes Unit also explained that although there was
no physical evidence to corroborate the allegation of sexual assault, Debra’s
grandmother’s statement of what she observed, along with Debra’s allegations (as
told to Debra’s mother), the testimony of the nurse and the forensic
interviewer corroborated Debra’s story.  The garbage bag collected from the
scene provided additional corroboration.  During her testimony, Debra described
in detail how appellant put his “poo-poo bug” in her “middle part” while she
was in the playhouse with appellant.  Additionally, she testified that
appellant put his “poo-poo bug” in her “booty” on more than one occasion.  The
lack of physical or DNA evidence does not render the evidence insufficient
because Debra provided ample testimony to establish appellant sexually
assaulted her.  See Bargas, 252 S.W.3d at 888. 

Appellant complains generally that Debra’s testimony
consisted of different and inconsistent versions of the sexual assault.  Appellant
argues that although Debra testified that she initially told her mother
“everything,” that testimony conflicts with her mother’s testimony in that it
was not until the following day that Debra told her about the events in the
playhouse.  Appellant also claims that Debra’s description of the events to the
nurse conflicted with Debra’s in-court testimony.  Specifically, appellant
contends Debra told the nurse that while she and appellant were in the
playhouse, appellant pulled her panties to the side and put his “thing” in her
“poo-poo.”[6] 
Appellant points to Debra’s testimony that, while in the playhouse, appellant
pulled her underwear halfway down and put his “middle part” in her “middle
part.”  Appellant also complains that Debra asserted new allegations of sexual
assault for the first time at trial, referring to Debra’s testimony describing
several different occasions of sexual assault that were never mentioned to the
nurse or Debra’s mother prior to her alleging them in court.  Furthermore,
appellant argues Debra “hated” appellant.  It is the role of the jury to
reconcile conflicts, contradictions, and inconsistencies in the evidence.  See
Bargas, 252 S.W.3d at 888; Tran, 221 S.W.3d at 89 (providing that
inconsistent statements were not enough to render the evidence insufficient
because the jury heard the inconsistent statements from two witnesses and still
found the accused guilty of aggravated sexual assault).  The jury heard Debra’s
testimony, and as the sole judge of witness credibility, was free to believe or
disbelieve any portion.  See Fuentes, 991 S.W.2d at 271; Cain
v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997).  We presume that
when faced with conflicting evidence, the jury resolved the conflicts in favor
of the prevailing party.  See Turro, 867 S.W.2d at 47.  

When the evidence is viewed
in the light most favorable to the verdict, the jury, as the rational trier of
fact, could have determined that the essential elements of the offense were met
beyond a reasonable doubt.  See Bargas, 252 S.W.3d at 889 (concluding
that the evidence was legally sufficient because the jury heard the evidence
and inconsistencies and still found the essential elements met beyond a
reasonable doubt).  Viewing all of the evidence in a neutral light, we are not
able to say with some objective basis in the record that appellant’s
convictions are clearly wrong or manifestly unjust because the great weight and
preponderance of the evidence contradicts the jury’s verdict.  See Tran,
221 S.W.3d at 89 (concluding that the inconsistencies and conflicting testimony
were not enough to render the evidence factually insufficient because the jury
heard the inconsistencies and conflicting testimony and found the accused
guilty).  The evidence presented is legally and factually sufficient to support
appellant’s convictions for aggravated sexual assault of a child.  See Tran,
221 S.W.3d at 89; Bargas, 252 S.W.3d at 889.  Accordingly, we overrule
appellant’s two issues.  

The judgment of the
trial court is affirmed.   

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

Panel consists of Justices
Frost, Boyce, and Sullivan.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] To protect the privacy of
the child complainant in this case, we identify her by a pseudonym, Debra.





[2] During her testimony, Debra
explained that this part of the body is to “use the restroom.”  Debra
subsequently testified that she understood “poo-poo” and “poo-poo bug” to mean
the female and male sexual organs, respectively.  





[3] Debra also used the term
“middle part” to refer to the female and male sexual organs.  





[4] During her testimony,
Debra explained that a “booty” is part of the body that is used to “poo-poo.”  





[5] Although appellant
challenges the legal and factual sufficiency of the evidence in two separate
issues, we review these two issues together.  





[6] Debra told the nurse
“thing” is “what mans have” and “poo-poo” is what “ladies have.”