In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00343-CR

____________


RAFEAL MARTINEZ, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 228th District Court 

Harris County, Texas

Trial Court Cause No. 1040118 






MEMORANDUM OPINION

 A jury convicted appellant, Rafeal Martinez, of aggravated sexual assault of
A.R., a child under the age of fourteen, and the trial court assessed punishment at
life in prison. Tex. Penal Code Ann. §22.021(a)(1)(B)(iii) (Vernon 2003 &
Supp. 2007). Appellant contends that the evidence is legally and factually
insufficient to support the conviction, and that the trial court erred in admitting
State's Exhibit 3, a videotape. We affirm. 

Facts

 While her mother was bathing her on August 23, 2005, A.R., a four-year-old, complained that "her privates were burning and hurting." When asked if
anyone had touched her there, she said "yes" and identified her Uncle Victor, who
is the brother of her stepfather, Angel Martinez. While being interviewed later by
Claudia Mullin, a forensic interviewer with the Harris County Children's
Assessment Center, A.R. made an outcry to Mullin that her "Uncle Ralph"
(appellant) had also touched her and had "licked her flower." Mullin discerned
that "flower" meant A.R.'s genital area. A.R. eventually stated that she had been
sexually abused by four men as follows: her Uncle Victor; appellant; Ramon Perez,
a family friend; and Brayton Adams, a family friend and former boyfriend of
A.R.'s mother's sister. Appellant babysat A.R. more than five times.

 A.R. testified at trial that the first instance of sexual abuse by appellant took
place when she was home alone with her brother and appellant. When she went
"downstairs" to get a drink of water, appellant, who was seated on the couch in the
living room, told A.R. to come to him. After she approached, appellant pulled
down A.R.'s pants and undergarments and put his hand on her "flower." At trial,
A.R. identified her "flower" as her genitalia. While touching her, appellant told
A.R. not to tell anyone what he had done. A.R. told appellant to stop, which he
did, and she ran to her room and locked the door.

 The second incident occurred at night while A.R.'s parents were in their
bedroom watching television. Appellant was spending the night at the apartment. 
While going to the bathroom and to get a drink of water, she ran into appellant,
whom she identified as the same man who had touched her "flower" the first time. 
Appellant told A.R. to come to him and then lifted her and put her on the couch,
where he pulled down her shorts and undergarments. After pulling off A.R.'s
undergarments, appellant touched her "flower" with his tongue, "it was going up
and down . . . inside of my flower." Appellant told A.R. not to tell anyone what he
had done. A.R. told appellant to stop, which he did, and she went "upstairs."

 At trial, A.R. identified State's Exhibit 2, a photograph of appellant at the
time of the alleged abuse, as her Uncle Ralph, "the boy that--the one that sexually
abused me," but she could not identify him in the courtroom. A.R. defined
"sexually abused" as "a guy touched you is where--is where that they're not
supposed to touch you." Using anatomically correct dolls, she was able to identify
the breasts, bottom, and "flower" as the places on a girl that a person is never
supposed to touch. 

 Just before A.R.'s mother found out about the alleged abuse, A.R. had
become "clingy" with her mother; "[s]he didn't never [sic] want to leave my side."
She also began wetting the bed, "acting like a baby," cried a lot, became afraid of
men, and started having nightmares. (1) When talking with her mother about the
abuse, A.R. did not confuse the four men she accused of abusing her and did not
confuse what they did to her. 

 While interviewing A.R. on August 23, 2005, Claudia Mullin found her to
be on target developmentally. A.R. was able to give details of the alleged assault
according to her developmental age. At that age, "[t]hey can answer who, what,
where and how, but not when." In addition, A.R. was able to give spontaneous
details during the interview. This was important to Mullin "because it adds to the
visual that she's reliving something and she's filling in the blanks." (2) A.R. also
used sensory detail to describe her abuse by demonstrating to Mullin how appellant
had lifted her up on to the couch and using her hand to demonstrate how he licked
her. (3) During her interview with Mullin, A.R. was consistent in recounting what
had happened to her. "[S]he repeated exactly the same thing and, you know, was
saying what happened to her again in almost the exact same way, but giving me
more detail about where he was and where she was." A.R. was also consistent in
distinguishing between the actions of the separate abusers. 

 Mullin stated that children commonly tell an interviewer about other
abusers. It is also common for a child to be revictimized, Mullin explained,
because they have been desensitized, and their "boundaries are down." 

 A.R. received treatment from two therapists, Karen Sullivan of Child
Advocates of Fort Bend and Elizabeth Esquivel of the Children's Assessment
Center of Houston. (4) During her therapy with Sullivan, A.R. was consistent in her
descriptions of the abuse. She did not seem confused and did not recant her
allegations. Sullivan testified that A.R. gave a "very credible" statement about
appellant. According to Esquivel, A.R. showed behaviors typical of a sexual abuse
victim and never recanted her story during therapy. Neither Sullivan nor Esquivel
was able to identify appellant as A.R.'s abuser. 

 After A.R. named "Uncle Ralph" as a perpetrator in her interview with
Mullin, Detective J. Stephens was assigned to investigate the case. Detective
Stephens had been a police officer for 16 years, nine of which he had spent in the
child-abuse division. After interviewing her, Detective Stephens found that A.R's.
statements were consistent, and that she had sexual knowledge beyond her years. 

 As part of his investigation of appellant, Stephens invited him to give a
voluntary statement in response to A.R.'s allegations. State's Exhibit 3 is the
videotape of that interview. During the interview with Detective Stephens,
appellant stated that he believed A.R. to be truthful and that she would not lie. 
Appellant did not think A.R. was lying about the allegations regarding her Uncle
Victor. When informed that A.R. had made similar allegations against him,
appellant described an incident in which he was bouncing A.R. on his knee and had
possibly grabbed her in her vaginal area when she began to fall. When Officer
Stephens told appellant that A.R. said that he had touched her vagina with his
mouth, appellant continued to repeat the story that an accidental touching had
occurred; he "could not recall" that anything that A.R. described had occurred. 

 Detective Stephens testified that appellant's answers and his statements
made during the interview, that he cannot be "around kids," are consistent with
attempts by sexual abuse suspects to minimize their involvement. Based on his
experience interviewing suspects, Detective Stephens opined that appellant's
persistence in repeating the accidental touching stories, despite allegations of a
different form of touching, was consistent with a perpetrator who is not telling the
truth, but using an answer prepared in advance of the interview. 


Legal Sufficiency Challenge

 Appellant's first issue disputes the legal sufficiency of the evidence to
support his conviction. Specifically, appellant argues that (1) the inability of A.R.
to identify him at trial as the perpetrator of her alleged assault; (2) the failure of the
State to identify him as the same individual interviewed on the videotape, State's
Exhibit 3; and (3) the inability of the expert witnesses to identify him as A.R.'s
abuser, render his conviction legally insufficient.

A. Standard of Review

 When evaluating the legal sufficiency of the evidence, we view the evidence
in the light most favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);
Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). The standard is
the same for both direct and circumstantial evidence cases. King v. State, 895
S.W.2d 701, 703 (Tex. Crim. App. 1995). We do not resolve any conflict of fact,
weigh any evidence, or evaluate the credibility of any witnesses, as this is the
function of the trier of fact. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.
Crim. App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). 
Instead, our duty is to determine whether both the explicit and implicit findings of
the trier of fact are rational by viewing all the evidence admitted at trial in the light
most favorable to the verdict. See Adelman, 828 S.W.2d at 422. In conducting our
review, we resolve any inconsistencies in the evidence in favor of the verdict. 
Matson, 819 S.W.2d at 843. A person commits aggravated sexual assault of a child if he intentionally or
knowingly causes the sexual organ of a child to contact or penetrate the mouth,
anus, or sexual organ of another person, including the actor. Tex. Penal Code
Ann. §22.021(a)(1)(B)(iii) (Vernon 2003 & Supp. 2007). The testimony of the
child victim alone is sufficient to support the conviction for sexual abuse. Tex.
Code Crim. Proc. Ann. art. 38.07(a) (Vernon 2005); Tran v. State, 221 S.W.3d
79, 88 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd).

B. Discussion

 Having reviewed the evidence in the requisite light, we conclude that A.R.'s
testimony was legally sufficient to establish that appellant sexually assaulted her,
as section 22.021(a)(1)(B)(iii) of the Penal Code defines that offense and as
charged in the indictment. Although A.R. could not identify appellant in person at
trial, she was able to identify a photograph of appellant near the time that the 
abuse happened as "[t]he boy that--the one that sexually abused me." A.R.'s
mother, in turn, identified the man in the same photograph as appellant and pointed
him out in the courtroom. It is undisputed that, since the last time A.R. saw
appellant before trial, appellant had shaved his facial hair and had changed his
hairstyle. Appellant also argues that A.R. had been coached in her therapy sessions
to identify the man in the photograph as the boy who sexually abused her. But it
was the role of the jury, as fact-finder, and is not the role of this Court, to
determine A.R.'s credibility. See Adelman, 828 S.W.2d at 421. 

 We hold that a reasonable jury could find beyond a reasonable doubt from
A.R.'s identification of the man in the photograph as the man who abused her,
together with A.R.'s mother's identification of the man in the photograph that A.R.
had used to identify appellant as appellant, that appellant sexually abused A.R.. 
Because the testimony of A.R. is sufficient alone to uphold a conviction for
aggravated sexual assault pursuant to article 38.07 of the Code of Criminal
Procedure, we need not reach appellant's second and third challenges to legal
insufficiency of the evidence to support his conviction. See Tex. Code Crim.
Proc. Ann. art. 38.07(a).

 We overrule appellant's first issue.

Factual Sufficiency of the Evidence

 Appellant's factual sufficiency challenge in issue two focuses on (1) A.R.'s
testimony that the sexual assaults occurred "downstairs" in a single-floor
apartment, (2) the inability of A.R.'s therapists to state that appellant sexually
abused A.R., (3) the lack of medical evidence or photo-identification evidence of
A.R.'s outcry identification of appellant as the person who sexually assaulted her,
(4) the inability of A.R. to identify appellant as the "Uncle Ralph" who sexually
assaulted her, (5) the failure of Detective Stephens to identify appellant at trial as
the same Ralph Martinez he interviewed on August 31, 2005, and (6) appellant's
choice not to flee. 

A. Standard of Review

 In conducting a factual-sufficiency review, we view all of the evidence in a
neutral light, Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997), and will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). Under the first prong of Johnson, we cannot conclude that a
conviction is "clearly wrong" or "manifestly unjust" simply because, on the
quantum of evidence admitted, we would have voted to acquit had we been on the
jury. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the
second prong of Johnson, we cannot declare that a conflict in the evidence justifies
a new trial simply because we disagree with the jury's resolution of that conflict. 
Id. Before finding that evidence is factually insufficient to support a verdict under
the second prong of Johnson, we must be able to say, with some objective basis in
the record, that the great weight and preponderance of the evidence contradicts the
jury's verdict. Id. In conducting a factual-sufficiency review, we must also
discuss the evidence that the appellant contends most undermines the jury's
verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). The fact-finder alone determines what weight to place on contradictory testimony because
that determination depends on the fact-finder's evaluation of credibility and
demeanor. Cain, 958 S.W.2d at 408-09. As the determiner of the credibility of
the witnesses, the fact-finder may choose to believe all, some, or none of the
testimony presented. Id. at 407 n.4.

B. Discussion

 In reviewing all the evidence in the requisite neutral light, we cannot
conclude that the evidence is so weak that the verdict is clearly wrong or
manifestly unjust, or that the verdict is against the great weight or preponderance
of the evidence. We note at the outset that the perceived inconsistency in A.R.'s
testimony does not pertain to the operative elements of the offense, but to location
of the offense and the physical description of the apartment where this young child
lived with her parents. Child victims of violent crimes cannot be expected to
testify with the same clarity and ability expected of adults. Villalon v. State, 791
S.W.2d 130, 134 (Tex. Crim. App. 1990). 

 Despite the perceived inconsistency in A.R.'s description of the "upstairs"
location of her bedroom, the record demonstrates marked consistency in her claims
of sexual abuse by appellant and others. A.R. never denied that appellant sexually
abused her. Mullin testified that A.R. was consistent in recounting what happened
to her and in distinguishing between the actions of the separate abusers. According
to Mullin, A.R.'s use of spontaneous and sensory detail gave credibility to her
outcry. Sullivan testified that A.R. gave a "very credible" statement, was
consistent in her descriptions of the abuse, and did not recant her allegations. 
Similarly, Esquivel testified that A.R. showed behaviors of a sexual abuse victim
and never recanted her story. Detective Stephens also found that A.R. was
consistent in recounting her assaults, and that she had sexual knowledge beyond
her years. 

 Deciding what weight to accord contradictory testimony is within the sole
province of the jury, Cain, 958 S.W.2d at 408-09, which is also the sole judge of
the credibility of the witnesses and is free to believe or disbelieve any portion of a
witness' testimony. Id. at 407 n.4. Though presented with evidence that A.R. was
wrong when she said the abuse took place "downstairs," the jury chose to believe
A.R. to be credible, as shown by its verdict. This inconsistency in A.R.'s
testimony regarding physical locations, when compared to her otherwise consistent
testimony and the testimony of the other witnesses, does not compel the conclusion
that the evidence at trial is so weak that the verdict is clearly wrong or unjust or
against the great weight or preponderance of the evidence. 

 Appellant next argues that the evidence is factually insufficient because (1)
A.R.'s therapists did not state that appellant sexually abused her and (2) the State
presented no medical or photo-identification evidence that A.R. had previously
identified appellant as the person who sexually assaulted her. In sexual abuse
cases, however, the testimony of the child victim alone is sufficient to support the
conviction. Tex. Code Crim. Proc. Ann. art. 38.07(a) (Vernon 2005); Tran, 221
S.W.3d at 88. Accordingly, neither medical evidence nor expert testimony that
appellant sexually assaulted A.R. is necessary for the evidence to be factually
sufficient to support a conviction for aggravated sexual assault. Id.

 Appellant further contends that the evidence is factually insufficient because
A.R. did not identify him as the man who sexually assaulted her and because
Detective Stephens did not identify appellant at trial as the same Ralph Martinez
whom he interviewed on August 31, 2005. A totality of the circumstances test
determines whether the evidence sufficiently proves that appellant is the individual
alleged to have committed the offense. Miller v. State, 667 S.W.2d 773, 776 (Tex.
Crim. App. 1984); see Rohlfing v. State, 612 S.W.2d 598, 601 (Tex. Crim. App.
1981).

 A.R. was able to identify the man in the photograph, State's Exhibit 2, as the
man who abused her, and her mother was able to identify the man in the same
photograph as appellant. The inability of A.R. to identify appellant as her abuser at
trial can readily be explained by the differences in the appearance of appellant
since A.R. last saw him and at trial. And though Detective Stephens did not
identify appellant as the man in the videotape, appellant identified himself as Ralph
Martinez during the videotaped interview, which enabled the jury to compare the
man speaking to Detective Stephens in the videotape with appellant, seated in the
courtroom, and with the man in the photograph. Under the totality of these
circumstances, the evidence presented is factually sufficient to support
identification of appellant as A.R.'s abuser. See Miller, 667 S.W.2d at 776.

 Lastly, appellant argues that his decisions not to flee and to speak to
Detective Stephens demonstrate that the verdict is against the great weight and
preponderance of the evidence. We cannot agree that evidence that appellant chose
not to flee so overwhelms the great weight of the State's evidence that the verdict
is manifestly wrong and unjust.

 The State presented testimony by A.R. that appellant sexually abused her. 
A.R.'s therapists testified that A.R. never varied in recounting details of the
assaults, showed behavior consistent with that of a child victim, was articulate and
provided spontaneous sensory detail that enforced the reality of the assault, and
that abuse by multiple parties is common. Likewise, Detective Stephens testified
that appellant's reactions to A.R.'s accusations are those Stephens commonly
associates with guilty parties. Having examined the record and considered the
evidence in the requisite neutral light, in particular the evidence that appellant
contends most undermines the verdict, we cannot say that the jury's finding
appellant guilty was so contrary to the overwhelming weight of the evidence as to
be manifestly wrong and unjust. See Watson, 204 S.W.3d at 414-15. 

 We overrule appellant's second issue.

Admission of Videotaped Statement

 In his third issue, appellant contends that the trial court erred by admitting
State's Exhibit 3, the taped interview between Detective Stephens and appellant in
which appellant stated, "I can't be around kids. No, after that bouncing on the
knee incident, I talked to Angel and I stopped playing with the kids. I knew I
couldn't be around kids." Appellant argues that his stating that he cannot be
around kids would serve to alert the jury of his previous criminal or bad acts. 
Appellant supports his argument by emphasizing that the prosecution referred to
the statement in argument to the jury to bolster its contention that appellant was
guilty and had acted in conformity with his character as a child predator. 

 To preserve an issue for appeal, a party must timely object and state the
specific legal basis of the objection. Tex. R. App. P. 33.1(a)(1); Rhoades v. State,
934 S.W.2d 113, 121, 127 (Tex. Crim. App. 1996). An objection stating one legal
theory, however, cannot support a different legal theory on appeal. Medina v.
State, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999); Camacho v. State, 864 S.W.2d
524, 533 (Tex. Crim. App. 1993). Unless the issue raised on appeal comports with
the objection made at trial, so that the trial judge had an opportunity to rule on that
issue, nothing is preserved for appellate review. Johnson v. State, 803 S.W.2d 272,
292 (Tex. Crim. App. 1990), overruled on other grounds by Heitman v. State, 815
S.W.2d 681, 690 (Tex. Crim. App. 1991).

 At trial, Appellant objected to the admission of the videotape evidence by
invoking Tex. R. Evid. 403, contending that the use of the videotape would "be
highly prejudicial--any prejudice would outweigh any probative value to leave
that in the tape." Appellant presents a different issue here and invokes Tex. R.
Evid. 404(b) to argue that the use of the videotaped evidence "could only serve to
alert jurors" not only that he had committed a previous criminal or bad act that
resulted in a formal restraint of his ability to be in the presence of children, but that
he had "acted in conformity with his character as a child predator." 

 Appellant never objected at trial that the admission of the videotape violated
rule 404(b) and has therefore waived his complaint. We overrule appellant's third
issue.


Conclusion


 We affirm the judgment of the trial court.





 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley


Do not publish. See Tex. R. App. P. 47.2(b)

1. Testimony at trial showed that these symptoms are common in children who have
been sexually abused. 
2. Mullin explained that spontaneous detail occurs when a person provides details that
the interviewer did not request and other than in a rote manner. 
3. Mullin explained that sensory detail is very important because "memory is stimulated
by sensory detail and stored sensory." 
4. Sullivan has a Bachelor's in Psychology and a Master's in Social Work and is
licensed in the state of Texas as a social worker. Esquivel has a Bachelor's and a
Master's in Psychology and a temporary license in general counseling.